UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
TINA M. DRENNEN,

                              Plaintiff,          10-CV-6007MAT

               v.                                 **DECISION**
                                                  **and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security

                              Defendant.
_____

## INTRODUCTION

Plaintiff Tina Drennen ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1383 (c)(3) and 42 U.S.C. § 405(g) of the Social Security Act ("the Act") seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI").

The Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") on the grounds that the Administrative Law Judge's ("ALJ") decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings pursuant to Rule 12(c), on grounds that the Commissioner's decision was erroneous and not supported by substantial evidence in the record. For the reasons set forth below, the Court finds that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law. Therefore the Commissioner's motion for judgment on the pleadings is granted.

1

**BACKGROUND**

On April 28, 2006, Plaintiff protectively filed an application for SSI alleging disability beginning October 1, 2003. Plaintiff then filed a timely request for a hearing on September 11, 2006. On July 28, 2008, Plaintiff appeared at a video hearing before ALJ William R. Pietz. In a decision dated September 4, 2008, the ALJ determined that Plaintiff had severe impairments, but that they were not of the severity to meet the criteria of any listed impairment. On December 2, 2009, the ALJ's decision became the Commissioner's final decision after the Appeals Council denied Plaintiff's Request for Review. Upon the denial by the Appeals Council, Plaintiff timely filed the instant action.

**DISCUSSION**

**I. Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB,

305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by substantial evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff has not plead a plausible claim for relief, judgment on the pleadings may be appropriate. See Bell Atlantic v. Twombly, 550 U.S. 544 (2007).

II.   **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

In his decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ adhered to the Social Security Administration's five-step sequential analysis in determining disability benefits. See 20 C.F.R. § 404.1520. At Step One, the ALJ considers whether the claimant is currently engaged in substantial gainful activity. Step Two: If the claimant is not, the ALJ considers whether the claimant has severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers from an impairment that is listed in Appendix 1 of Subpart P of the Social Security Regulations, the claimant will be considered disabled without considering other factors. If the claimant does not have an impairment listed in Appendix 1, the ALJ will determine whether or not the claimant, despite his impairments, retains the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform any past work, the ALJ will determine whether the claimant can perform other work in the local or national economy.

Here, under Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of April 28, 2006. (Transcript of Administrative Proceedings at 14 ("Tr."). At Steps Two and Three, the ALJ concluded that Plaintiff's impairments, which include a depressive disorder, diabetes mellitus

with diabetic neuropathy, mild degeneration in the knee, low back pain, obesity, and a history of drug and alcohol use/abuse in remission, were "severe" within the meaning of the Regulations. But Plaintiff's impairments did not meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P. (Tr. at 14).

Under Steps Four and Five, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work within the meaning of the regulations with the following limitations: she can occasionally climb, squat, kneel, and crawl; she can follow simple instructions; she is unable to deal with the public, but can occasionally deal with supervisors and co-workers. (Tr. at 16). At Step Four, the ALJ found that Plaintiff has no past relevant work. (Tr. at 21). At Step Five, considering the claimant's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (Tr. at 21).

## A.   **The ALJ properly discounted the opinion of the nurse practitioner.**

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because he did not afford significant weight to the opinion of Luis Berrios, Plaintiff's nurse practitioner. This argument falls short because "the ALJ [is] free to discount the [nurse practitioner's] assessments accordingly

5

in favor of the objective findings of other medical doctors."
Genier v. Astrue, 298 F. App'x. 105, 108-09 (2d Cir. 2008).

The Social security regulations distinguish between "acceptable medical sources" and "other medical sources." See 20 C.F.R. § 416.913(a),(d)(1); SSR 06-03P. "Acceptable medical sources" include licensed physicians, whereas "other medical sources" include nurse practitioners. 20 C.F.R. § 416.913(a), (d)(1). An "acceptable medical source" may be entitled controlling weight under the treating physician's rule. According to C.F.R. § 404.1527, "'a treating source's opinion on the issue(s) of the nature and severity of your impairment(s)' will be given 'controlling weight' if the opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (discussing § C.F.R. 404.1527.). However, because  nurse practitioner Berrios is not an "acceptable medical source," he "opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight." Genier, 2008 U.S. App. LEXIS 23136, 298 F. App'x. at 108; 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1); SSR 06-03P.

In determining the weight to be given to the opinions from both "acceptable medical sources" and "other medical sources," the

ALJ must consider the following six factors: "the length and frequency of the treating relationship; the nature and extent of the relationship; the amount of evidence the [source] presents to support his or her opinion; the consistency of the opinion with the record; the [source's] area of specialization; and any other factors the claimant brings to the ALJ." Carlantone v. Astrue, No. 08 Civ. 07393(SHS), 2009 WL 2043888, at *5 (S.D.N.Y. 2009); See 20 C.F.R. § 416.927(d); SSR 06-03P.  After weighing the factors, "[t]he ALJ is free to conclude that the opinion of an ["other medical source"] is not entitled to any weight, however, the ALJ must explain that decision." Saxon v. Astrue, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011).

     In Hussnatter v. Astrue, No. CV-09-3261 (SJF), 2010 WL 3394088 (E.D.N.Y. 2010), the court was confronted with a very similar situation. Faced with a medical opinion from an involved nurse practitioner, the court found that because the opinion was from a nurse practitioner, and not a doctor, the ALJ was "free to discount his opinions in favor of the objective findings of medical doctors." Hussnatter, 2010 WL 3394088 at *21. The court noted that the ALJ based his decision on grounds that the medical opinion was not supported by the nurse practitioner's own clinical notes of treatment, and that the opinion was inconsistent with other objective medical evidence in the record from the consulting physicians.

Similarly, Nurse Berrios' medical opinion was not supported by his own clinical notes. In Berrios's medical opinion he states that Plaintiff should only occasionally walk, and that she cannot stoop, kneel, crouch, or crawl (Tr. at 242-43. However, during his more recent examination of Plaintiff, Berrios recommended aerobic exercises and walking programs. (November 12, 2008, March 3, 2008) (Id. at 246-55). Additionally, Berrios noted in his medical opinion that plaintiff could perform all daily activities, including: ambulating without assistance; walking a block at a reasonable pace on rough or uneven surfaces; and climbing a few steps at a reasonable pace without the use of a hand rail. (Id. at 245). Thus, his medical opinion and clinical notes are inconsistent.

Additionally, the record supports the ALJ's conclusion that "there is no objective evidence of severe neuropathy."[1] (Id. at 20). As the Commissioner points out, the ALJ's determination is consistent with that of consultative examiner Dr. Harbinder Toor. During a physical examination, Dr. Toor noted that Plaintiff "appeared to be in no acute distress. Gait is normal." (Id. at 308). Dr. Toor noted that Plaintiff had a normal stance, did not use any assistive device, needed no help changing for the exam or getting on and off the exam table, and she was able to rise from

---

[1] Neuropathy is an "abnormal and usually degenerative state of the nervous system or nerves." "Neuropathy." Merriam-Webster Online Dictionary. 2011. http://www.merriam-webster.com (Jan. 9, 2011).

her char without difficulty. (Id.). Dr. Toor opined that the plaintiff exhibited a "[m]ild to moderate limitation for sitting for a long time, walking for a long distance, standing for a long time, heavy lifting, bending, and twisting of the thoracolumbar spine because of the pain in the feet and the lower legs because of diabetic neuropathy." (Id. at 310).

The ALJ's determination is also consistent with separate examinations conducted by Andrew Hillburger, M.D. and Harry I. Zirna, DPM. On March 7, 2005, the Plaintiff was evaluated for foot pain by Dr. Hillburger.  Although Dr. Hillburger found that "some symptoms could be consistent with neuropathy. One could also consider an element of an orthopedic foot problem." (Tr. at 382). Additionally, Dr. Hillburger stated that there was no evidence of peripheral neuropathy or a compression neuropathy. (Id.). He opined that Plaintiff "be evaluated by an orthopedic surgeon or a podiatrist." (Id.).

On April 20, 2006, May 4, 2006, and May 11, 2006, Plaintiff was evaluated by Dr. Zirna for intense pain with both feet.(Id. at 344-46). On May 11, 2006, Dr. Zirna opined that Plaintiff "purchase a pair of running sneakers." (Id. at 346).

This Court finds that there is substantial evidence to support the ALJ's determination not to accord significant weight to Nurse Berrios's medical opinion.

**B.    The ALJ's failure to conduct a function-by-function analysis was harmless error.**

Plaintiff argues that the ALJ failed to conduct a function-by-function assessment of plaintiff's physical and mental capacities as required by SSR 96-08P. Specifically, the regulation requires that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-08P(4). Plaintiff contends that because the ALJ did not provide a function-by-function analysis, this was legal error. (Pl. Brf. at 16).

The Second Circuit has yet to address the obligation of an ALJ to conduct a function-by-function analysis before expressing the RFC in terms of exertional levels of work. See Novak v. Astrue, No. 07 Civ. 8435(SAS), 2008 WL 2882638, at *3 (S.D.N.Y. July 25, 2008). However, at least five circuit courts of appeal have found that an ALJ is not required to discuss each factor in their opinion. Carrigan v. Astrue, 2:10-CV-303, 2011 WL 4372651 (D. Vt. 2011) (citing Zatz v. Astrue, 346 F. App'x 107, 111 (7th Cir.2009); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.2005); Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir.2003); Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547 (6th Cir.2002) (citing Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153 (3d Cir.2000))).

10

Indeed, as both Plaintiff and Defendant point out, the district courts of New York are somewhat split on this issue. Compare Bennett v. Astrue, 1:06-CV-0649 (NAM), 2009 U.S. Dist. LEXIS 32756, at *38 (N.D.N.Y., April 17, 2009) (case remanded because "[t]he ALJ merely reported his RFC finding in conclusory fashion devoid of specifics regarding plaintiff's precise limitations) with Novak v. Astrue, No. 07 Civ. 8435(SAS), 2008 WL 2882638, at *3 (S.D.N.Y. 2008) (ALJ discussed all of the evidence in detail...and required no further function-by-function analysis). Still, even some decisions in the Northern District of New York acknowledge "that failure to express the mental RFC in terms of work-related functions is not a *per se* basis for remand." Sanderson v. Astrue, No. 08-CV-1177 (GTS/VEB), 2011 WL 1113856, at *5 (N.D.N.Y. 2011). Because the Second Circuit has not specifically ruled on this issue, this Court will apply the harmless error standard. See Miles v. Barnhart, No. 6:06-CV-391 (LEK/GHL), 2008 WL 5191589, at *9 (N.D.N.Y. 2008).

This Court finds that the ALJ's failure to conduct a function-by-function analysis as stated in SSR 96-08P was harmless error. Although he did not specifically conduct the analysis, the ALJ went into explicit detail as it pertained to the plaintiff's medical history. (Tr. at 16-21). The ALJ discussed in great detail, among other aspects of the medical history, two consultative psychiatric examinations by Christine Ransom, Ph.D., an internal medicine

consultative examination by Samuel Balderman, M.D., an evaluation by Andrew Hillburger, M.D., office notes from Harry Zirna, DPM, and an internal medicine consultative examination by Harbinder Toor, M.D., and office notes and a medical source statement from Luis Berrios, NP.

The consultative psychiatric examination on February 14, 2005, by Dr. Ransom indicated that Plaintiff's attention, concentration, and memory were all intact. (Tr. at 393). Plaintiff had average intellectual functioning and her insight and judgment were fair. (Id.) Additionally, Plaintiff could follow and understand simple directions and instructions, perform simple rote tasks, maintain attention and concentration for simple tasks, consistently perform simple tasks and learn simple and new tasks. (Id. at 394). The consultative psychiatric examination on August 4, 2006, by Dr. Ransom indicated that Plaintiff was coherent and goal directed. Her attention, concentration, and memory were all intact. (Id. at 313). Dr. Ransom stated that Plaintiff "will have mild to moderate difficulty performing complex tasks." (Id. at 314).

The internal medicine consultative examination by Dr. Balderman on February 14, 2005, indicated that Plaintiff appeared to be in no acute distress.(Id. at 387). Plaintiff could squat full with some help from upper extremities. (Id.). Plaintiff had full range of motion of hips, knees and ankles bilaterally. (Id. at 388). Dr. Balderman opined that "claimant has moderate

limitations in sustained physical activities mainly due to her obesity and poor weight control."(<u>Id.</u> at 388).

The evaluation by Dr. Hillburger indicated that Plaintiff revealed good strength in all extremities. (<u>Id.</u> at 381). Plaintiff's cranial nerve exam and motor exam were normal. (<u>Id.</u>). There was no evidence of a peripheral neuropathy or a compression neuropathy.(<u>Id.</u> at 382). Dr. Hillburger suggested Plaintiff be examined by an orthopedic surgeon. (<u>Id.</u>).

The office notes from Dr. Zirna indicated that Plaintiff had thick, dystrophic, discolored great toenails with deeply incurvated nail plates. (<u>Id.</u> at 344). A muscular exam yielded a result of 5/5 in dorsifelxion, plantarflexion, eversion and inversion bilateral. Dr. Zirna diagnosed onychia, diabetes, and hallux valgus deformities (bunyons) in both great toes. (<u>Id.</u> at 346).

The internal medicine consultative examination by Dr. Toor indicated that Plaintiff's daily activities included, among other activities, cooking, cleaning, and doing laundry. (<u>Id.</u> at 308). Plaintiff appeared to be in no acute distress. (<u>Id.</u>). Plaintiff's gate was normal and could squat 50%. (<u>Id.</u>). Plaintiff did not use an assistive device. (<u>Id.</u>). He opined that Plaintiff had a mild to moderate limitation for sitting for a long time, walking for a long distance, standing for a long time, heavy lifting, bending, and twisting of the thoracolumbar spine. (<u>Id.</u> at 310).

Other than citing to the policy interpretations of SSR 96-08P, Plaintiff does not list a specific harm that was caused by the ALJ's failure to conduct the analysis. (Pl. Brf. at 16). In light of the ALJ's thorough analysis of the medical evidence, this Court finds that there is substantial medical evidence in the record to support the ALJ's decision.

## C.    1. The ALJ's credibility determination of plaintiff's testimony was supported by substantial evidence.

Plaintiff contends that the ALJ's finding regarding her credibility as it pertains to her statements concerning intensity, persistence, and the limiting effects of her symptoms is not supported by substantial medical evidence. (Pl. Brf. at 20). At the outset of the evaluative process, the ALJ is required to consider subjective complaints of pain. §§ 404.1529(a), (d), 416.929(a), (d). However, the ALJ is not "obliged to accept without question the credibility of such subjective evidence." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). The ALJ retains discretion when evaluating the credibility of the claimant, "and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Id. If "after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, the ALJ decides to discredit plaintiff's claim of severe and disabling pain, that decision is supported by substantial evidence." Pascariello v. Heckler, 621 F. Supp. 1032, 1036 (S.D.N.Y.

14

1985). If the ALJ decides to discredit Plaintiff's testimony, he must give specific reasons so that the reviewing court can determine whether there was substantial evidence supporting the ALJ's finding. See Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y.1987).

Here, the ALJ gave little weight to plaintiff's claims for various reasons, including that Plaintiff often lied to get cocaine, and that her testimony as to the length of time she could sit was contradicted by her apparent comfort while sitting for over 30 minutes at the hearing. (Tr. at 21). After reviewing the record and the ALJ's decision, this Court finds that the ALJ's credibility determination was supported by substantial evidence.

## 2. The ALJ posed a complete hypothetical to the vocational expert.

Plaintiff claims that the vocational expert relied on an incomplete hypothetical question from the ALJ, which yielded job results that were inconsistent with the RFC determination. This Court rejects Plaintiff's argument. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence." See Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir.1983). A complete review of the vocational expert's testimony and viewed in the context of the medical evidence of Plaintiff's capabilities and the vocational expert's review of the plaintiff's file supports his opinion as to Plaintiff's RFC. See (Tr. at 465-467).

15

As stated above, the ALJ's RFC determination was based on the opinion of the vocational expert to a hypothetical question supported by substantial evidence in the record. This Court has considered Plaintiff's other arguments and finds them to be without merit.

**CONCLUSION**

For the reasons set forth above, I grant Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
          MICHAEL A. TELESCA
     United States District Judge

Dated:    Rochester, New York
          January 09, 2012